## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

*In re:*

Quartz Hill Mining, LLC,
Superior Gold, LLC,

_____Debtors_____ /

Chapter 11

Case No. 14-15419-AJC
Case No. 14-15424-AJC
(Jointly Administered)

### DEBTORS' RESPONSE TO WILLIAM B. KEMPER AND
### MARJORIE ROBBINS DAGGETT'S MOTION TO DISMISS THESE CHAPTER 11
### PROCEEDINGS PURSUANT TO 11 U.S.C. §1112(b), AND 28 U.S.C. § 1408 [ECF# 31]

Quartz Hill Mining, LLC and Superior Gold, LLC, the Debtors-In-Possession in the above-captioned bankruptcy case (the "Debtors"), by and through undersigned counsel, file this response in opposition (the "Response") to motion to dismiss (the "Motion")[ECF # 31] filed by the Estate of William B. Kemper and Marjorie Robbins Daggett ("Kemper/Daggett"), and in support thereof, states as follows:

### JURISDICTION

1.       This Court has jurisdiction pursuant to 11 USC §1334.

2.       Venue is appropriate in this District, and in the Miami-Dade County Division of this District, pursuant to 11 U.S.C. §§ 1408 and 1412.

### INTRODUCTION

3.       Kemper/Daggett proceeds under the flawed and incorrect assumption that the Debtor is a "single asset real estate debtor" as defined by 11 U.S.C. §101(51B), and on that basis, that the Debtor has filed this case in bad faith. Until adjudicated otherwise by this Court, the Debtor is a "small business debtor," and this is a "small business case," as defined by 11 U.S.C. §§101(51)(C) &

(D), respectively, and therefore the analysis under *In re Phoenix Picadilly*[1], and its progeny, that Kemper/Daggett asks this Court to undertake is simply inapplicable. Venue is not only appropriate in this District under 28 U.S.C. §1408, but required in the interests of justice under 28 U.S.C. §1412 as it is the bad faith of Kemper/Daggett that must be addressed, and not of the Debtor. Kemper/Daggett previously submitted itself to the jurisdiction of this Court, and sat on their rights with respect to the final, non-appealable SubCon[2] order entered by this Court.    When Kemper/Daggett fully appreciated the implication of that order, and the rights they waived under that order by their inaction before this Court, Kemper/Daggett chose to unlawfully and collaterally attack the jurisdiction of this Court and its ruling in the forum of another state in what amounts to a reverse *Rooker-Feldman*[3] situation. It is, therefore, only before *this* Court that the egregiously bad faith conduct of Kemper/Daggett can be adequately addressed. In order to do so, however, a review of the complex procedural history of this case, and the cases before this Court that preceded it, is in order.

## BACKGROUND

### A.    The Merendon Bankruptcy Case

4.    Kemper/Daggett has been involved in litigation since 1992 in state District Court, County of Gilpin, Colorado (the "Colorado State Court"), styled *The Estate of William B. Kemper and Marjorie Robbins Daggett v. The Estate of Harold Caldwell, as administered by Personal Representative and Attorney-in-Fact Dawn Fedrigon (substituted for Harold Caldwell, a/k/a Harold D. Caldwell, a/k/a Harold D. Cauldwell, individually and as Trustee for Kenneth J. Caldwell and/or*

---

[1]  849 F.2d 1393 (11th Cir.1988).
[2]  As further defined below.
[3]  The doctrine takes its name from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts.

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

*Gregory D. Caldwell and/or Chain O'Mines, and as Trustee For Caldwell Trust of Texas); Caldwell Trust of Texas, an alleged trust, et. al.* (the "Colorado State Court Case").

5.    On February 4, 2009, Merendon Mining (Nevada) Inc., a Nevada Corporation ("Merendon"), was placed into a Chapter 7 involuntary bankruptcy proceeding before this Court by the filing of involuntary Case No.: 09-11958-AJC (the "Merendon Bankruptcy"). On June 9, 2009, the Court entered an Order for Relief in the Merendon Bankruptcy and Marcia Dunn was appointed Trustee (the "Trustee") on June 10, 2009.

6.    Kemper/Daggett continued to litigate in the Colorado State Court Case and in September, 2009 obtained by default a judgment against Sentinel Mining Corp. ("Sentinel"), one of the named defendants, and Merendon.

7.    On October 7, 2009, a judgment in favor of Kember/Daggett was recorded in the amount of $1,402,789.10. On October 7, 2009, the Colorado State Court recorded the Judgment against Sentinel.

8.    On December 15, 2009, the Trustee filed an adversary proceeding, styled *Dunn v. Brost et. al.* Adversary Proceeding No. 09-02518-AJC (the "First Adversary Case") against: (a) Merendon Mining (Colorado), Inc., a Colorado corporation, (b) Merendon Mining (Arizona), Inc., a Nevada corporation, (c) Merendon Mining (California), Inc., a Nevada corporation, (d) True North Productions, LLC, a Nevada corporation, and (e) Sentinel (collectively, the "U.S. Merendon Mining Entities")

9.    The First Adversary sought, in relevant part, a determination from this Court to: (a) pierce the corporate veil of U.S. Merendon Mining Entities pursuant to 11 U.S.C. §544(b) and applicable state common law, and (b) declare, pursuant to applicable state and federal law, that the assets of U.S. Merendon Mining Entities, including, title to the Glory Hole Mine, Gilpin County,

Colorado, one of the properties now owned this these Debtors, were assets of the Merendon Bankruptcy.

10.     On January 27, 2010, this Court entered an Order (the "Subcon Order") substantively consolidating, among other non-debtor entities, the U.S. Merendon Mining Entities, *nunc pro tunc* to the Merendon Bankruptcy petition date of February 4, 2009.

11.     On February 10, 2010, in the First Adversary Case, the Trustee filed a Motion for Partial Summary Judgment against the U.S. Merendon Mining Entities, including Sentinel, seeking in relevant part to pierce the corporate veil and to declare that the assets of these entities were assets of the Debtor.

12.     On March 8, 2010, Kemper/Daggett appeared in the Merendon Bankruptcy and filed a secured proof of claim in the amount of $1,451,457.00 (Claim 542-1).

13.     On March 11, 2010, this Court granted the Trustee Partial Summary Judgment, and determined that the U.S. Merendon Mining Entities' properties, including the property owned by Sentinel (the "Sentinel Properties") were property of the Merendon Bankruptcy estate, substantively consolidated the Sentinel properties into the Debtor's estate, extended the automatic stay over the Sentinel Properties, providing that all persons or entities claiming an interest, by way of ownership or lien, in any of the Sentinel Properties, may file a claim or adversary proceeding, as appropriate in the Merendon Bankruptcy case.  Inclusive of the Sentinel Properties was property known as the Glory Hole Mine.

14.     On March 17, 2010, the SubCon order was recorded in Gilpin County, Colorado, and the partial summary judgment was likewise recorded in Gilpin County on April 26, 2010.

15.     On September 29, 2010, the Trustee filed an Adversary Proceeding, No.: 10-03623-AJC (the "Second Adversary Case") [ECF# 8] against, among others, Kemper/Daggett, the Estate of

4

Harold Caldwell, Dawn Caldwell Fedrigon and Michael Fedrigon, seeking a declaratory judgment to determine the validity, extent and priority of any liens, claims, encumbrances or interests in various mining properties in Colorado, including the Sentinel Properties.

16.     On November 5, 2010, Kemper/Daggett filed an Answer and Counterclaim to the Trustee's Complaint.  Subsequently, Kemper/Daggett withdrew their initial Answer on November 17, 2010 and filed an Answer and Affirmative Defenses ("Second Answer ") (ECF #35 in the Second Adversary of the Merendon Bankruptcy), asserting that it had a valid judgment lien in the real property owned by Sentinel.

17.     However, Kemper/Daggett never challenged the substantive consolidation of Sentinel into the Merendon bankruptcy, despite the entry of the SubCon Order which was *nunc pro tunc* to the date of filing of the Merendon Petition, or February 4, 2009.  February 4, 2009 preceded Kemper/Daggett's recordation of its judgment in Gilpin County, Colorado, by eight (8) months.

18.     On August 19, 2011, the Trustee filed a Motion to Approve Settlement with the Estate of Harold Caldwell Through its Personal Representative, Dawn Caldwell Fedrigon, and Dawn and Michael Fedrigon (the "Settlement Motion") (ECF #262 in the Merendon Bankruptcy).

19.     As part of the settlement, the Trustee agreed to settle all matters with the Fedrigons and to convey the various properties, including the Glory Hole Mine, which constituted what is now property of the Debtors, including property previously owned by Sentinel, to the Fedrigons ISAOA. The Fedrigons agreed to settle all matters and to pay the Bankruptcy Estate the sum of $600,000.00 and other considerations.  Paul Garfinkle, a party to the Colorado State Court Case, and the prior registered agent for Sentinel, objected to this proposed settlement but that objection was overruled by this Court.

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

20.    On September 27, 2011, an Order was entered approving the Settlement Motion and overruling Mr. Garfinkle's objection (the "Settlement Order") [ECF #282 in the Merendon Bankruptcy].

21.    The properties were conveyed by the Trustee to Quartz Hill Mining, LLC ("Quartz") and to Superior Gold, LLC. ("Superior"), the Debtors currently before the Court.

22.    Notwithstanding the proceedings in the main case of the Merendon Bankruptcy, as well as the proceedings in both the First and Second Adversaries, Kemper/ Daggett continued their litigation in the Colorado State Court Case. In fact, Kemper/Daggett engaged in a blatant, collateral attack upon not only the core jurisdiction of this Court, but also on its final, non-appealable ruling in the SubCon order by asking the Colorado State Court to ignore the SubCon order. Unfortunately, ignoring all notions of Comity, Full Faith and credit, and the reverse application of the *Rooker-Feldman* Doctrine, on February 11, 2014, an order was entered by Judge Philip James McNulty of the Colorado State Court finding that Kemper/Daggett was entitled to execute on their Judgment (the "KD Execution Order") because, *inter alia,* this Court's SubCon Order was unconstitutional because it violated Kemper/Daggett's due process rights under the United State Constitution.

23.    On March 7, 2014, the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code.

24.    On March 25, 2014, Debtors filed their Complaint to Determine Extent, Validity and Priority of Kemper/Daggett's lien.

25.    Kemper/Daggett also moved to dismiss these Chapter 11 proceedings on March 25, 2014 [ECF# 31].

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

26.     The Debtors are operating their respective businesses and managing their affairs as debtors-in-possession pursuant to the authority of sections 1107(a) and 1108 of the Bankruptcy Code.

27.     To date, no trustee, examiner, or statutory committee has been appointed in these cases.

**B.      This Court is the Proper Forum to Determine the Effect of the Subcon Order**

28.     The primary thrust of Kemper/Daggett's bad faith argument is that the Debtors acted in bad faith by seeking bankruptcy court protection from the Colorado state court litigation on the eve of execution, and that by doing so the Debtors sought to avoid the posting of a *supercedeas* bond for an appeal.  Ironically, and in a case of 'pot & kettle' Kemper/Daggett also accuses the Debtor of attempting to re-litigate matters before this Court that were "settled" by the Colorado State Court. This bankruptcy was necessitated by Kemper/Daggett's violation of the automatic stay in the Merendon Bankruptcy proceeding and by the Colorado state court's refusal to give full faith and credit to the bankruptcy court's Subcon Order in that case.

29.     Upon entry of the Subcon Order the automatic stay was retroactively in effect against Sentinel, and any property it owned, *nunc pro tunc* to the petition date.  Approximately six (6) weeks after this Court issued the Subcon Order, Kemper/Daggett appeared in the bankruptcy case by filing their proof of claim.  Three days later, this Court entered partial summary judgment in the Second Adversary, determining that the property owned by Sentinel, including the property now owned by these Debtors, was property of the Merendon Bankruptcy estate.  Kemper/Daggett had notice of both the Subcon Order and the Partial Summary Judgment Order, but did nothing to challenge either order.  Instead, Kemper/Daggett continued to participate in the Merendon Bankruptcy and assert claims as a secured creditor in the Merendon bankruptcy.  Four (4) years later, in 2014, while the

7

Merendon bankruptcy was still pending, Kemper/Daggett successfully sought to have the Colorado state court invalidate the effect of this Court's Subcon and Settlement Orders. The Colorado State Court's ruling has no legal effect on the SubCon order or the Debtors' property. Indeed, the Subcon Order renders the Kemper/Daggett judgment void, *ab initio*.

30.     In the Eleventh Circuit, actions in violation of the automatic stay are void *ab initio*. *U.S. v. White*, 466 F.3d 1241, 1244 (11th Cir.2006). Such acts are deemed "without effect" and are rendered an absolute nullity. *Matter of Ring*, 178 B.R. 570, 579 (Bkrtcy. S.D. Ga. 1995). Because Kemper/Daggett violated the automatic stay by proceeding to judgment against Sentinel, while the stay was in effect, the judgment is rendered void as a matter of law. Accordingly, not only is Kemper/Daggett not a secured creditor of these Debtors, they are not a creditor of the Debtors at all.

31.     As the Ninth Circuit observed in *In re Robert Gruntz*, 202 F.3d 1074 (9th. Cir. 1999):

> The automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts. *See Celotex Corp.*, 514 U.S. at 313, 115 S.Ct. 1493. That is so not only because of the "comprehensive jurisdiction" vested in the bankruptcy courts, *see id.* at 308, 115 S.Ct. 1493, but also because " 'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.' " *Id.* at 306, 115 S.Ct. 1493 (quoting *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.*, 445 U.S. 375, 386, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980)).

Like the parties in *Gruntz*, Kemper/Daggett was on notice of the applicability of the stay. Notwithstanding this notice, and actual participation in the Merendon Bankruptcy, Kemper/Daggett took the improvident step of not only continuing its action before the Colorado State Court, but of attempting to levy and execute upon property that they knew was subject of the automatic stay, and the Settlement Order.

32.     By enacting the Bankruptcy Code, Congress empowered the Bankruptcy Courts to, under certain circumstances; modify state court orders and judgments. *See Gruntz* (9th Cir. 1999).

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

As the 9th Circuit went on to explain, however, "...state courts are completely without power to restrain federal-court proceedings in *in personam* actions." *Donovan v. City of Dallas,* 377 U.S. 408, 412–13, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (footnote omitted).

33.    On similar facts to those before the Court, the Bankruptcy Court for the Southern District of New York also found it appropriate to nullify a state court judgment as void, *ab initio*, when it was entered in violation of the automatic stay. *See In re Joanne F. Killmer*, 501 B.R. 208 (Bankr.S.D.N.Y. 2013). In *Killmer*, an *in rem* tax sale of the debtor's property was commenced, the property was sold, and title was transferred between 2008 and 2010—all while the debtor's bankruptcy case remained open and pending. On April 16, 2013, Beneficial instituted a foreclosure action against the debtor in state court.   Patrick Conway, the person who purchased the Debtor's property out of the tax sale, appeared and filed a motion to dismiss the foreclosure action on the grounds that he received title to the property free of Beneficial's mortgage from the tax sale and subsequent deed transfer. Beneficial raised the automatic stay as a defense to that motion to dismiss, and the state court granted Conway's motion to dismiss, holding that the tax sale did not violate the automatic stay.

34.    The *Killmer* court held that, in an exception to the *Rooker-Feldman* Doctrine, a bankruptcy court can "override" a state court judgment if the state court judgment is void *ab initio,* and subjecting that state court judgment to collateral attack in a federal court if the state court acted beyond its power. *Id.* This is because in the 2nd Circuit, as in  the 11th Circuit, any proceedings or actions taken in violation of the automatic stay are void and without legal effect. Kemper/Daggett knew about this Court's imposition of the automatic stay in the Merendon Bankruptcy upon the entry of the SubCon order. If they quarreled with the propriety or effect of the SubCon order they certainly failed to either seek rehearing or appeal. Moreover, Kemper/Daggett participated in the Merendon

9

Bankruptcy and had notice of the Settlement Order which had the effect of transferring what is now these Debtors' property out from the consolidated Merendon/Sentinel estates. They likewise did not object to, or appeal that order.

35.    What Kemper/Daggett did do was to engage in an impermissible collateral attack upon this Court's jurisdiction by attempting to have the Colorado State Court sit as an appellate body of the Bankruptcy Court for the Southern District of Florida. As the 9th Circuit held in *Gruntz*, the federal courts have the final authority to determine the scope and applicability of the automatic stay. "The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land." See *Kalb v. Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940). In fact, what the Colorado State Court did presents a reverse *Rooker–Feldman* situation as that court decided to proceed in derogation of this Court's orders.

### C.    A Bad Faith Analysis Under *Phoenix Picadilly* is Simply Inapplicable On These Facts.

36.    Because the KD Execution Order, and all of the orders that preceded it in the Colorado State Court Case, are void as a matter of law, Kemper/Daggett is not only not a secured creditor of these Debtors, Kemper/Daggett is not even a creditor of these Debtors.

37.    Kemper/Daggett argues that Debtors' Chapter 11 petitions present a *Phoenix Piccadilly*[4] case for dismissal for cause under 11 U.S.C. § 1112(b). Under *Phoenix Piccadilly*, a bankruptcy court may consider dismissal of a Chapter 11 bankruptcy filing by considering: (1) whether debtor has only one asset, the property at issue; (2) whether debtor has few unsecured creditors, whose claims are relatively small compared to claims of secured creditors; (3) whether debtor has few employees; (4) whether property is subject to foreclosure action as result of arrearages

---

4 *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988).

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

on debt; (5) whether debtor's financial problems essentially are a dispute between debtor and secured creditors which can be resolved in pending state court action; and (6) timing of debtor's filing and whether it evidences intent to delay or frustrate *legitimate efforts of debtor's secured creditors to enforce their rights*. *Id.* (emphasis supplied)

38.    Kemper/Daggett fails to analyze and elaborate upon the *Phoenix Picadilly* factors, but rather engages in conclusory assertions that ignore the critical distinctions between this case and the ordinary bad faith case. Kemper/Daggett's argument appears to center around the assertion that the "Debtors have only one asset which is the Colorado real property which is the subject of long standing Colorado litigation and pending foreclosure," *See* Motion to Dismiss ¶ 17b and that the Debtors' "petitions were filed to prevent a sheriffs' sale of the Debtors' real property . . . [and] to avoid posting a supercedeas bond in Gilpin County Colorado."[5] *See* Motion to Dismiss ¶ 17d-f.

39.    Kemper/Daggett is both factually and procedurally wrong. The fundamental dispute driving this case is not with a secured lender foreclosing upon property without equity on the eve of foreclosure. To the contrary, this dispute involves an invalid judgment and a disputed, at best *unsecured* creditor seeking to attempt to foreclose a property in which the Debtors' have a great deal of equity, making reorganization not only possible but likely. The Debtors had to undertake the filing of this case to prevent an unlawful forfeiture of their valid ownership interest. The bad faith that this filing forestalled was Kemper/Daggett's, not the Debtors'.

40.    An important factor in whether a reorganization is possible, is whether the debtor corporation has a significant equity cushion in its primary asset. *See In re Dunes Hotel Associates,*

---

5 Kemper/Daggett cites *Albany Partners Ltd v. W.P. Westbrook Albany Partner Ltd.*, 749 F.2d 670 (11th Cir. 1984) for the proposition that filing of a Chapter 11 bankruptcy petition on the eve of foreclosure sale is evidence of bad faith. However, unlike *Albany Partners*, which involved

11

188 B.R. 162, 169 (Bankr.D.S.C.1995) ("Obviously, whether there is net equity in a principal or single asset could be of importance in assessing the possibility of successful reorganization in a particular case."). Where, as here, the debtors have a substantial equity cushion and there is no secured creditor with a lien on the property, Debtors can use the equity in the real property as one means to reorganize. *In re Greenwood Supply Co.*, 295 B.R. 787, 792 (Bkrtcy. D.S.C. 2002). Accordingly, the Debtors may be able to successfully reorganize. Debtors' proposed investment banker, Teneo, will testify concerning the value of the Debtors' property and the very viable sale, financing and reorganization alternatives that may be available to the Debtors.

**D.    Venue Is Appropriate in the Southern District of Florida and In Fact Necessary As A Result of Kemper/Daggett's Bad Faith**

41.    Kemper/Daggett also moves to dismiss the Debtors' cases based on improper venue. Any venue analysis of these cases cannot ignore the Merendon Bankruptcy's long and complex procedural history, these cases' roots in the Merendon Bankruptcy, and Kemper/Daggett's participation in the Merendon cases, and their subsequent collateral attack on this Court's SubCon order. However, at bottom, a debtor's venue choice is presumed correct unless rebutted by a preponderance of the evidence. *See In re Cauley,* 374 B.R. 311,314 n.3 (Bankr. M.D. Fla. 2007) ("A bankruptcy case is presumed to have been filed in the proper venue.").

42.    It is axiomatic that the debtor's principal place of business includes the location of major decision making, often described as the debtor's nerve-center. *See Commonwealth of Puerto Rico v. Commonwealth Oil Refining Company, Inc. (In re Commonwealth Oil Refining Co.) ("CORCO "),* 596 F.2d 1239, 1245 (5th Cir. 1979). *CORCO* is binding precedent on the Court. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (Eleventh Circuit Court of Appeals

---

an undisputed secured creditor, this case involves a dispute over the validity of

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 ). *CORCO* was a Chapter XI case that applied statutory rules that proceeded 28 U .S.C. § 1408 and 1412. Repealed Fed. R. Bankr. P. 116(a)(2) provided that venue could lie where the debtor "had its principal place of business or its principal assets for the preceding (six) months or for a longer portion thereof than in any other district." Repealed Fed. R. Bankr. P. 116 also provided that a court could retain a case "in the interest of justice and for the convenience of the parties." Notwithstanding later technical rule changes, courts continue to apply the same venue analysis as employed by *CORCO. See In re Enron C0lp.,* 274 B.R. 327, 344 (Bankr. S.D.N.Y. 2002) *(citing Collier on Bankruptcy,* 1J1014.02(2][a], 1014-4 (15th ed. Rev. 2001)). *See also Collier on Bankruptcy* (15th Ed. Rev. 11 4.01[2][b]) ("For corporations, the principal place of business seems to be where important business decisions are made, sometimes referred to as the 'nerve-center'") *(citing In re Peachtree Lane Assoc., Ltd.,* 1 SO F.3d 788 (7th Cir. 1998); *In re Garden Manor Assoc., L.P.,* 99 B.R. 551 (Bankr. S.D.N.Y. 1988); *In re Deabel, Inc.,* 193 B.R. 739 (Bankr. E.D. Pa. 1996)). The seminal nerve-center cases, *CORCO* and *In re Peachtree Lane Associates, Ltd.,* combined with the significant history of these cases in the Merendon Bankruptcy, strongly dictate a finding that Miami is the appropriate venue.

43.    The Debtors are entities have members in Texas, Colorado, Illinois and a registered agent in Miami. John Moffa, the Debtors' registered agent, represented the acquireors of the Glory Hole Mine, and predecessors in interest of these Debtors, out of the Merendon Bankruptcy. As such, all of the institutional knowledge of this case is derived from Mr. Moffa, the Merendon Bankruptcy court file, and this Court. With membership in 4 states, arguably any of them could have served as appropriate venue for these cases, but the conduct of Kemper/Daggett, and the history of the

Kemper/Daggett's judgment.

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

Merendon Bankruptcy, which is the substantive and procedural predicate for these cases makes the Miami-Dade County Division of this Court the most logical place to file.

### **CONCLUSION**

44.    The Debtors acquired their property out of bankruptcy cases that are still pending in the Southern District of Florida before this Court.  Had Kemper/Daggett obeyed the final, non-appealable ruling of this Court coming out of those cases, the Debtors would have never filed these bankruptcy cases, here or anywhere else.  It is only because Kemper/Daggett engaged in an unlawful collateral attack of this Court's orders that the Debtor had to seek protection before this Court.  By filing, the Debtors prevented a levy and execution of their properties to Kemper/Daggett, which would have operated as a forfeiture of all of the Debtors' equity to one unsecured creditor, if Kemper/Daggett is a creditor of these estates at all.  Rather, the Debtors preserved the equity in these properties for all creditors, before the forum that is most familiar with the Debtors' acquisition of these properties, and the forum that is best situated to protect the interests of all creditors.

WHEREFORE, the Debtors respectfully request entry of an order denying the Motion, and granting such other and further relief as is just and equitable.


*[Space Left Intentionally Blank]*

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy herein was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on April 21st 2014.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

EHRENSTEIN CHARBONNEAU CALDERIN
**Attorney for the Debtors in Possession**
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002        F. 305.722.2001
www.ecclegal.com


By: _____
     Robert P. Charbonneau, Esq.
     Florida Bar No.: 968234
     rpc@ecclegal.com
     Jacqueline Calderin, Esq
     Florida Bar No: 134414
     jc@ecclegal.com